IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


AARON NELSON,

      Petitioner,

v.                          Case No. 2:10-cv-00893

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

      Respondent.


**PROPOSED FINDINGS AND RECOMMENDATION**

On July 12, 2010, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1).  On October 8, 2010, Respondent filed an Answer (ECF No. 8), a Motion for Summary Judgment (ECF No. 9), with accompanying exhibits, and a Memorandum of Law in support thereof (ECF No. 10).

Pursuant to the holding of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was notified that he had the right and an obligation to file a response to Respondent's motion, submitting affidavits or statements subject to the penalties of perjury, exhibits, or other legal or factual material supporting his position in the case.  Petitioner was also advised that a failure to respond to the motion may result in entry of summary judgment denying the relief sought in the Petition and dismissing the suit. Petitioner's response to the Motion for Summary Judgment was due by November 12, 2010.  No response was filed.  This matter is ripe for

determination.

**PROCEDURAL HISTORY**

During the January 2004 term, Petitioner was indicted by a Mingo County Grand Jury on one count of First Degree Murder, one count of First Degree Sexual Assault, one count of Kidnapping, and one count of Conspiracy. (ECF. No. 9, Ex. 1). The State moved to dismiss the Conspiracy charge before Petitioner's trial. (ECF No. 9, Ex. 11 at 9-10).

Following a jury trial that occurred between September 14-16, 2004, Petitioner was found guilty of First Degree Murder, First Degree Sexual Assault and Kidnapping. (Id., Ex. 2). By amended sentencing order entered May 31, 2005, Petitioner was sentenced to two terms of life without mercy on both the murder and kidnapping charges, and 15 to 35 years on the sexual assault count, with each sentence to run consecutive to the others. (Id., Ex. 3).

Petitioner, by counsel, filed a Petition for Appeal in the Supreme Court of Appeals of West Virginia (the "SCAWV"), raising the following assignments of error:

1.   The State's evidence was insufficient to support the Petitioner's convictions of First Degree Murder, First Degree Sexual Assault, and Kidnapping[.] The Petitioner has been denied his right to trial and due process.

2.   The lower court abused its discretion by permitting the prosecution to introduce into evidence pictures of Wanda Lesher not long after her death.

3.   Ineffective assistance of counsel. [Specifically, Petitioner challenged his counsel's failure to advise/allow him to testify at trial.]

(<u>Id.</u>, Ex. 4).  By Order entered May 23, 2006, the SCAWV refused Petitioner's Petition for Appeal.  (<u>Id.</u>, Ex. 5).

On February 2, 2007, Petitioner filed a <u>pro se</u> Petition for a Writ of Habeas Corpus in the Circuit Court of Mingo County (Case No. 07-C-50), raising the same grounds for relief that were raised in his direct appeal:

1.  The State's evidence was insufficient to support the Petitioner's convictions of First Degree Murder, First Degree Sexual Assault, and Kidnapping[.] [T]he Petitioner has been denied his right to trial and due process (U.S. Const. Amend 5 & 6 and W. Va. Const. Art. III, Sec 10 and 14.)

2.  The court abused its discretion by permitting the prosecutor to introduce into evidence pictures of Wanda Lesher not long after her death.

3.  Ineffective assistance of counsel.

(<u>Id.</u>, Ex. 6).  Upon initial review, the Circuit Court appointed counsel to represent Petitioner in his habeas corpus proceedings.

On February 27, 2008, Petitioner's counsel, Susan J. Van Zant, filed an amended/supplemental petition, which raised the following grounds for relief:

A.  The court erred in allowing testimony of Alfred Dingess, Jr.

B.  The State failed to meet its burden of proving sexual assault.

C.  The State failed to meet its burden of kidnapping.

D.  The jury was inflamed by gruesome pictures.

E.  Ineffective assistance of counsel. [Petitioner claims that his trial counsel should have called various witnesses who could have impeached the credibility of Alfred Dingess, Jr.]

3

(<u>Id.</u>, Ex. 7).

An omnibus habeas corpus hearing was held on November 3, 2008, during which Petitioner, his father and his sister testified. (<u>Id.</u>, Ex. 12).  By Order entered March 23, 2009, the Circuit Court denied Petitioner's habeas corpus petition.  (<u>Id.</u>, Ex. 8).

On February 12, 2010, Petitioner filed a Petition for Appeal from the denial of his habeas corpus petition in the SCAWV, raising identical grounds for relief.  (<u>Id.</u>, Ex. 9).  On May 5, 2010, the SCAWV refused Petitioner's Petition for Appeal.  (<u>Id.</u>, Ex. 10).

Petitioner then filed the instant petition under 28 U.S.C. § 2254, on July 12, 2010, repeating the same grounds for relief:

    A.   The court erred in allowing testimony of Alfred Dingess, Jr.

    B.   The State failed to meet its burden of proving sexual assault.

    C.   The State failed to meet its burden of kidnapping.

    D.   The jury was inflamed by gruesome pictures.

    E.   Ineffective assistance of counsel.  [Petitioner claims that his trial counsel should have called various witnesses who could have impeached the credibility of Alfred Dingess, Jr.]

(ECF No. 1).

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings.   See, e.g., Blackledge v. Allison, 431 U.S. 63, 81 (1977); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991).   Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

### STATEMENT OF FACTS AND RELEVANT TESTIMONY[1]

In the early morning hours of August 30, 2002, Wanda Lesher left a bar in Logan County, West Virginia, and drove away accompanied by Petitioner and Alfred Dingess, Jr. (hereinafter "Dingess").   Dingess testified that, earlier that night, he had gone with Lesher, who he stated was Petitioner's ex-girlfriend, to another man's apartment and had sex, and then came back to the bar.

According to Dingess, when he, Petitioner and Lesher left the bar together, Petitioner asked Lesher to drive up to the Canterbury

---

[1]   This summary of the facts is based upon a review of the trial transcript.  The facts were described in a slightly different manner by Petitioner's counsel in Petitioner's state habeas petition and by the SCAWV in David Nelson's appeal.

Cemetery, in Mingo County, West Virginia.  At Petitioner's trial, Dingess testified that, shortly after their arrival at the cemetery, Petitioner's brothers, David Nelson and Clinty Nelson, and another man, Zandell Bryant, arrived.  Dingess testified that Petitioner had sex with Lesher on the back of David Nelson's pickup truck at the cemetery.

Dingess further testified that Lesher eventually made a derogatory remark about Petitioner's father, and Petitioner took a two-by-four board from a nearby picnic table and struck Lesher in the head with it.  According to Dingess, all five of the men who were there repeatedly struck Lesher with the board, which resulted in skull fractures, broken facial and jaw bones, and broken ribs. The blows rendered Lesher unconscious, and the men thought she might already be dead.

According to Dingess, the men then took Lesher's body in David Nelson's pickup truck to Messinger Hollow, also in Mingo County, where they placed her body in a drainage pond.  Dingess further testified, "I guess they had sex on the back of the truck with her before they throwed her off."  (ECF No. 9, Ex. 11 at 150-53). Because Lesher's body was still visible in the water, they retrieved it, tied her hands and feet with one of her shoelaces and, according to Dingess, Petitioner strangled Lesher with her other shoelace.  They then constructed a shallow grave nearby, threw Lesher's body in the grave, and covered it with some brush. (Id. at 154-55).

7

Dingess testified that they returned to the cemetery and that he took Lesher's car and ultimately burned it at a location in Logan County, West Virginia. (<u>Id.</u> at 155-56). Dingess repeatedly testified that, on the night of these crimes, he drank tequila and other liquor, took a number of Xanax pills, ingested cocaine and smoked marijuana.

At approximately 5:45 p.m. on September 1, 2002, Trooper John W. Milum received a phone call from the Mingo County 911. The dispatcher informed him that an unclothed female had been found in a shallow grave at Messinger Hollow. Trooper Milum went to the scene and observed the body, which was naked and buried under brush and laid beside a stream. There was a shoestring tied around the female's neck and her hands were bound behind her back.

The body was subsequently identified by family members as being that of Wanda Lesher. The medical examiner testified that the cause of Lesher's death was multiple blunt force trauma to the head, back and torso, with drowning and strangulation as contributing factors.

The investigating officers received information that Alfred Dingess, Jr. had made statements to several people indicating that he was involved in Lesher's murder. Thus, Trooper Milum located Dingess, read him his rights, and took a statement from him. In his first statement, Dingess implicated only himself and Petitioner. As a result of that statement, at approximately 12:44 a.m. on Monday, September 2, 2002, the investigating officers went

8

to Petitioner's residence and stated that they needed to speak to him.  According to Trooper Milum, Petitioner got into a cruiser with himself and Trooper Roger Johnson, and Petitioner immediately stated, "I didn't do anything to that girl."  (<u>Id.</u> at 48).

Although the troopers discovered blood on the clothing Petitioner was wearing at that time, DNA testing indicated that it was Petitioner's own blood on his clothes.  DNA testing did not reveal any evidence linking Petitioner to the crimes; nor were Petitioner's fingerprints found on any of the evidence tested.  Other than the victim's own blood, the only positively-identified DNA evidence located at the scene was the DNA of Alfred Dingess, Jr., which was found on a cigarette butt at the cemetery.  (<u>Id.</u> at 65-66).  In addition to the cigarette, the State Police recovered Lesher's blood, some of Lesher's jewelry and the two-by-four board at the cemetery.

In November of 2003, Zandell Bryant gave a statement to the police in which he implicated himself, Clinty Nelson and David Nelson in the Lesher crimes.  Alfred Dingess, Jr. then gave another statement and included David Nelson as one of the assailants.

On November 14, 2003, David Nelson gave a statement to the police in which he asserted that he was at work at Classic Conveyors in Chapmanville, West Virginia at the time of the crimes.  At David Nelson's trial, he asserted another alibi defense.  David Nelson, his wife, and one of his daughters testified that he was at home with both of his daughters on the night of the Lesher crimes,

while his wife was at work.  See State v. David Nelson, 655 S.E.2d 73, 76 (W. Va. 2007).

Alfred Dingess, Jr. was the only person implicated in these crimes who testified at Petitioner's trial.  At the time of Petitioner's trial, Alfred Dingess, Jr. had agreed to plead guilty to one count of first degree murder, and was supposed to be sentenced to life with mercy as part of his plea agreement.[2] Zandell Bryant was convicted the day before Petitioner's trial of kidnapping, first degree sexual assault and second degree murder. Clinty Nelson is serving life imprisonment without parole for six offenses relating to the death of Wanda Lesher, including first degree murder and first degree sexual assault.

Petitioner's brother, David Nelson, was subsequently convicted of first degree murder, kidnapping, first degree sexual assault and three counts of conspiracy relating to those charges.  However, the SCAWV reversed his conviction on the basis that the trial court improperly admitted evidence of David Nelson's other bad acts and character evidence under Rule 404(b) of the West Virginia Rules of Evidence.  The reversal of David Nelson's conviction had nothing to do with the testimony of Alfred Dingess, Jr., or any other grounds similar to those raised by Petitioner herein.  David Nelson subsequently pled guilty to one count of conspiracy to commit first degree murder and one count of second degree murder.

---

[2]  The West Virginia Division of Corrections website indicates that Dingess is serving a prison term for arson.

**ANALYSIS**

**A.   Ground One - Testimony of Alfred Dingess, Jr.**

In Ground One of his section 2254 petition, Petitioner contends that the trial court "erred in allowing testimony of Alfred Dingess, Jr." (ECF No. 1 at 20).  The petition asserts that the State relied almost exclusively on Dingess's testimony because there was no DNA or other physical evidence to link Petitioner to the crimes.  (Id.)  The petitioner further asserts:

> Alfred Dingess Jr.'s (who exchanged a plea of guilty for a sentence of mercy) testimony is unreliable at best. Mr. Dingess testified he drank liquor, tequila, and took Xanaxes, cocaine and marijuana before the death of Wanda Lesher.   At times during his testimony, Mr. Dingess stated, "I don't know, I was drunk" or "I don't remember was taking Xanax" and "my memory goes in and out."  His testimony is discredited by his admitted use of drugs and alcohol leading up to the time of Ms. Lesher's death. Afterward, he told a neighbor he killed Wanda Lesher, only later when questioned by police did he implicate Aaron Nelson.
>
> * * *
>
> The State had overwhelming evidence against Alfred Dingess, Jr.  He was highly motivated to testify against your Petitioner.   The sentence he was facing before he pled was life in prison with no mercy.  Mr. Dingess is now eligible for parole after fifteen years because of the deal he made in exchange for his testimony.  Tr. Trans., Pg. 189, lines 1-16.

(Id. at 20, 23).

Respondent's Memorandum of Law in support of his Motion for Summary Judgment asserts that this claim concerns witness credibility, which is a jury question, and is not a proper ground for relief in federal habeas corpus.  (ECF No. 10 at 11).  The

11

Memorandum further states:

> The Petitioner has failed to raise a single constitutional issue in his ground for relief. There is no mention within the body of the Petitioner's argument of the Federal Constitution or Supreme Court case law. Indeed, there is no mention of the state constitution or State Supreme Court case law. The Petitioner has not phrased this specific ground for relief as a sufficiency of the evidence claim. This ground for relief [] simply re-litigates credibility decisions made by the jury over six years ago.

> The Petitioner does not claim that the State deliberately elicited testimony it knew to be perjurious. See Napue v. Illinois, 360 U.S. 264, 269 (1959). By Petitioner's own admission, the jury heard Mr. Dingess's condition, yet they still voted to convict. The State did not hide evidence, nor did the trial court limit defense counsel's ability to cross-examine the witness.

(Id.)

As noted by Respondent, "[i]t is not the province of the federal habeas court to re-weigh evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the finder of fact." See, e.g., Marshall v. Longberger, 459 U.S. 422, 434 (1983). Thus, Respondent argues that this ground for relief is wholly lacking in merit and that Respondent is entitled to judgment as a matter of law on this claim. (Id. at 11-12).

The State habeas court addressed this claim under the State court rules of evidence and made the following findings:

> 16. The Court FINDS that Mr. Dingess admitted at trial that his memory was not completely accurate and he did not remember all the events relating to Mr. Nelson at trial and admitted that he had been drinking and using various drugs throughout the night.

12

17. The Court FINDS that the fact that Mr. Dingess was drinking and using drugs on the night of Ms. Lesher's death does not render his testimony incompetent and inadmissible at trial.

18. Mr. Dingess was subject to intensive cross-examination and the jury had an opportunity to weigh the credibility of his testimony along with all other witnesses.

19. The Court FINDS that Mr. Dingess presented sufficient evidence at trial to show personal knowledge of the events leading to Ms. Lesher's death, therefore, the testimony was admissible with the Jury giving Mr. Dingess's testimony such weight as they found it deserved during their deliberations.

20. Accordingly, Petitioner's asserted ground for relief regarding Mr. Dingess's testimony is without merit and the instant Petition is DENIED.

(ECF No. 9, Ex. 8 at 9-10).

Petitioner has not disputed any of the factual or legal arguments made in Respondent's Motion for Summary Judgment. The admissibility of a witness's testimony is a matter of state law and the weight given to such testimony is a matter to be determined by the jury. Petitioner had sufficient opportunity to cross-examine Mr. Dingess and to offer evidence in rebuttal to his testimony.

Based upon a thorough review of the evidence of record, Petitioner has not demonstrated that the admission of Mr. Dingess's testimony violated any of Petitioner's federal constitutional rights. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly-established federal

13

law, and that Respondent is entitled to judgment as a matter of law on Ground One of Petitioner's section 2254 petition.

**B.    Grounds Two and Three - Sufficiency of Evidence.**

In Ground Two of his section 2254 petition, Petitioner asserts that the State failed to meet its burden of proving that a sexual assault occurred.  (ECF No. 1 at 23).  In Ground Three of his section 2254 petition, Petitioner asserts that the State also failed to meet its burden of proving that a kidnapping occurred. (<u>Id.</u>)

In reviewing the sufficiency of the evidence to support a state criminal conviction on a due process challenge in a federal habeas proceeding, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  The undersigned will address each of Petitioner's claims using this standard.

First, concerning the sexual assault charge, Petitioner claims:

> The only evidence that a sexual assault occurred was by the testimony of Alfred Dingess, Jr.  Forensic pathologist for the State of West Virginia medical examiner's office testified for the prosecution. Dr. Zia Sabet, who was qualified by the Court as an expert witness in the field of forensic pathology[,] testified that he could not tell whether a sexual assault occurred. There was no DNA evidence to link Mr. Aaron Nelson to the victim.  In fact he testified "I checked . . . carefully to see if there's any that [sexual assault.  There was no evidence of that].   I could not find any contusion,

14

abrasion or laceration.   <u>Tr. Trans.</u>, pg. 242-243, at lines 3-9.

Testimony by a co-conspirator is insufficient to sustain a conviction without correlating evidence. <u>State v. Maynard</u>, 183 W. Va. 1, 393 S.E.2d 221, 222 (1999), Syl Pt 1, the declarations or admissions of a participant in a conspiracy that has terminated, are not admissible in evidence against a coconspirator of the person making the declarations or admissions.  In order to be admissible, the co-conspirator's statement must have ben made in the course of the conspiracy. See <u>West Virginia Rule of Evidence</u>, 801(d)(2)(E), a tape recorded statement by a police officer after a murder is not admissible under this rule.  <u>State v. Jarrell</u>, 191 W. Va. 1, 442 S.E.2d 223 (1994).

Therefore, the testimony of Alfred Dingess, Jr. should not have been admissible against Aaron Nelson.

(ECF No. 1 at 23).  Similarly, concerning the kidnapping charge,

Petitioner's petition asserts:

There was no credible evidence introduced to even suggest that Wanda Lesher was kidnapped by Aaron Nelson. In fact, the only eyewitness testimony offered indicated that Alfred Dingess, Jr. and Wanda Lesher offered to give petitioner a ride home from the bar where they all had patronized the evening of August 29, 2002.  <u>Tr. Trans.</u> pg. 195, at lines 4-12.

(<u>Id.</u>)

Respondent's Memorandum of Law in support of his Motion for

Summary Judgment first addresses Petitioner's contentions

concerning the holding in <u>State v. Maynard</u>.  Respondent asserts

that Petitioner has mis-characterized the holding therein.

Respondent asserts that the applicable West Virginia law states

that "Conviction for a crime may be had on the uncorroborated

testimony of an accomplice, but in such case the testimony must be

received with caution and the jury should, upon request, be so

instructed." Syl. Pt. 1, <u>State v. Humphreys</u>, 36 S.E.2d 469 (W. Va. 1945); <u>see also</u> Syl. Pt. 3, <u>State v. Spadafore</u>, 220 S.E.2d 655, 657 (W. Va. 1975)("As a general rule, West Virginia Courts are not permitted to comment on the weight of the evidence; however, there is an exception entitling the defendant to an instruction that the uncorroborated testimony of a co-conspirator should be received with great caution when such testimony has a tendency to inculpate the accused.") (ECF No. 10 at 12-13).

Respondent's Memorandum of Law further points out that Petitioner has challenged Mr. Dingess's testimony as inadmissible hearsay. However, Dingess testified at Petitioner's trial to what he did and what he observed. As noted by Respondent:

> During his testimony, Mr. Dingess, Jr. did not quote the Petitioner once. Instead, he described what he saw the Petitioner do. Defense counsel had a full and fair opportunity to cross-examine him. His defense strategy was obvious. He sought to undermine Dingess's testimony and convince the jury that his client was not present at the victim's rape and murder. Counsel cross-examined Mr. Dingess, Jr. regarding his plea agreement [FN 5 omitted] and impeached him with inconsistencies between his first statement to Trooper Milum and his second statement given a couple of weeks before trial which implicated three other defendants. [FN 6 omitted]. (Resp't Ex. 11 at 71, 166, 167-74, 187, 304).

> Petitioner now seeks to have it both ways. First, defense counsel introduced Mr. Dingess Jr.'s statement in an effort to impeach his credibility; then the Petitioner complained that the very same statement was hearsay. (Resp't Ex. 11 at 171.) Nor did defense counsel object to the State's decision to call Mr. Dingess Jr. (Resp't Ex. 11 at 137.)

(ECF No. 10 at 13-15).

Turning specifically to the Petitioner's claim that the State failed to meet its burden of proving the sexual assault count against Petitioner, Respondent's Memorandum of Law states:

> Under State law the elements of First Degree Sexual Assault are: Such person engages in sexual intercourse or sexual intrusion with another person, and in so doing, inflicts serious bodily injury upon anyone. [FN 9] Although there was no physical evidence linking the Petitioner to the victim [FN 10] or that the medical examiner could not testify one way or the other [FN 11] whether the victim had sexual intercourse before she died; Mr. Dingess, Jr. clearly testified that the Petitioner had sexual intercourse with the victim in a pickup truck bed after he hit her on the back of the head with a two by four. A juror would be well within the bounds, taking the evidence in a light most favorable to the State, of rationality in finding the Petitioner guilty of First Degree Sexual Assault.
>
> [FN 9 - See W. Va. Code § 61-8B-3.]
>
> [FN 10 - "One of those reasons may be because the victim's body was submerged in water." (Resp't Ex. 11 at 226.)]
>
> [FN 11 - He did not exclude the possibility. He simply testified that he could not testify with any certainty because there was no physical evidence of trauma. (Resp't Ex. 11 at 242-44.)]

(ECF No. 10 at 16-17).

Concerning the Petitioner's claim that the State failed to meet its burden of proving the kidnapping count against Petitioner, Respondent argues:

> Petitioner also claims that the State failed to adduce constitutionally sufficient evidence to support his Kidnapping conviction. Mr. Dingess, Jr. testified that the Petitioner and his four friends loaded the victim onto the bed of his brother's pickup truck, and drove her to a deserted swimming hole, where they dumped her body. When they discovered that the victim's body was still visible, they buried her in a shallow grave.

17

> While they were driving her to this swimming hole, they
> took turns raping her.  Under State law, "[a]ny person
> who, by force, threat, duress, fraud or enticement take,
> confine, conceal, or decoy, inveigle, or entice away, or
> transport into or out of this state . . . or otherwise
> kidnap any other person, or hold hostage any other
> person, for the purpose . . . of evading capture or
> arrest after he or she or they have committed a crime
> shall be guilty of [Kidnapping.] [FN 12] A juror would be
> well within bounds of reason in finding the Petitioner
> guilty of Kidnapping the victim.
>
> [FN 12 - See W. Va. Code § 61-2-14(a).]

(Id. at 17).

When conducting a review of the evidence, the court must "consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from facts proven to facts sought to be established," United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982), and that the jury, not the court, is to determine the credibility of the witnesses and resolve factual conflicts.  Wiggins v. Corcoran, 288 F.3d 629 (4th Cir. 2002).

The state habeas court cited to the equivalent standards under West Virginia case law.  See State v. Guthrie, 461 S.E.2d 163 (W. Va. 1995), and also discussed state court law on accessories before and after the fact and principals in the first degree.  (ECF No. 9, Ex. 8 at 10-11).  The State habeas court then made the following findings:

> 25.  During the trial Mr. Dingess testified that Mr.
> Nelson was present with him and several others and
> participated in the activities against Ms. Lesher
> prior to her death.  However, the Medical
> Examiner's Office was unable to conclusively prove

that a sexual assault was committed.  Mr. Nelson also asserts that there was no evidence presented at trial regarding the kidnapping charge.

\* \* \*

28.  The Court FINDS that the State presented evidence through Mr. Dingess that Mr. Nelson had intercourse with Ms. Lesher after hitting her with a two-by-four.

29.  The Court FINDS that Mr. Dingess's statement, testimony before the Grand Jury, and at trial consistently portrayed Mr. Nelson as being with him at the time of Ms. Lesher's death.

30.  The Court FINDS that the inability of the Medical Examiner to conclusively find that a Sexual Assault occurred is not dispositive and the State is not required to provide absolute evidence of a crime and may merely show circumstantial evidence of the crime.

31.  The Court FINDS that Mr. Nelson has failed to meet his burden of proof regarding the sufficiency of the evidence presented at trial regarding Sexual Assault and Kidnapping.

32.  Accordingly, Petitioner's asserted ground for relief regarding the sufficiency of the evidence for the Sexual Assault and Kidnapping charges is without merit and the instant Petition is DENIED.

(ECF No. 9, Ex. 8 at 11-13).

Evidence presented at Petitioner's trial indicated that Petitioner left a bar with Ms. Lesher and Alfred Dingess, Jr. Dingess testified that Petitioner subsequently had sexual relations with Ms. Lesher, that he beat her with a two-by-four, and that he participated in moving Ms. Lesher's body to a concealed location, where she ultimately died.  These facts are sufficient to meet the essential elements of both sexual assault in the first degree and

19

kidnapping.

The jury was instructed that they may consider Dingess's uncorroborated testimony with caution, having heard, in particular, that Dingess was highly intoxicated, that he was an accomplice in the crimes, and that he was motivated to be untruthful. The jury weighed Dingess's credibility against all of the evidence presented, and chose to believe him.

Accordingly, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of each of these crimes beyond a reasonable doubt, in accordance with <u>Jackson v. Virginia</u>. Based upon the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that there was sufficient evidence for a rationale trier of fact to find that Petitioner kidnapped Wanda Lesher and committed a sexual assault in the first degree.

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on Grounds Two and Three of Petitioner's section 2254 petition.

**C. Ground Four - Gruesome photographs.**

In Ground Four of his section 2254 petition, Petitioner contends that the State displayed unnecessarily gruesome photographs of the victim shortly after her death, which inflamed

the jury.  (ECF No. 1 at 24).  The petition further asserts:

> The pictures did not assist the jury in determining that
> a crime had occurred, or identify who had committed the
> crime.  They were used for the sole purpose of jury bias
> against Aaron Nelson.  The court abused its discretion in
> admitting gruesome photographs of the victim.  This must
> be determined on a case-by-case basis pursuant to Rules
> 401-403 of the West Virginia Rules of Evidence.
>
> In <u>State v. Derr</u>, 192 W. Va. 165, 451 S.E.2d 731
> (1994), [the SCAWV] recognized that the admissibility of
> photographs, over an objection because of their
> gruesomeness, must be determined on a case-by-case basis,
> pursuant to Syllabus Point 10 of <u>State v. Derr</u>, <u>id.</u>, the
> Court stated:
>
>> Rule 401 of the West Virginia Rules of
>> Evidence requires the trial court to determine
>> the relevancy of the exhibit on the basis of
>> whether the photograph is probative as to a
>> fact of consequence in the case.  The trial
>> court then must consider whether the probative
>> rule [sic; value] of the exhibit is
>> substantially outweighed by the counterfactors
>> listed in Rule 403 of the West Virginia Rules
>> of Evidence.  [][T]he balancing test is
>> essentially a matter of trial conduct, and the
>> trial court's discretion will not be
>> overturned absence[ sic; absent] a showing of
>> clear abuse.

(ECF No. 1 at 24).

Respondent's Memorandum of Law in support of his Motion for

Summary Judgment asserts that this claim is purely a matter of

state law and is not cognizable in federal habeas corpus.  <u>See</u>

<u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  "Only if the

admission of the evidence was so prejudicial as to offend due

process may the federal courts consider it." (ECF No. 10 at 17-

18).  Respondent asserts that there is no evidence to support a

finding that Petitioner's trial was fundamentally unfair as a

result of the admission of the photographs of the victim. Respondent asserts, "Indeed, the horrific acts perpetrated by the Petitioner and his gang speak for themselves. No 'gruesome photos' could rob this Petitioner of his due process: he got exactly what was coming to him." (Id. at 18).

The State habeas court found as follows on this claim:

36. During the pretrial the State indicated that certain photographs would be presented as evidence during the trial and Mr. Nelson's counsel stipulated to those photographs['] admissibility.

THE COURT: We've already selected the jury in this matter. Are there any other pretrial matters that we need to take up from the State, Ms. Thompson?

MS. THOMPSON: You[r] honor, just the exhibits that we intend to offer. I know we provided copies to M[r.] Esposito prior to trial.

THE COURT: All right. Are you talking about the photographs?

MS. THOMPSON: Photographs.

THE COURT: In the case that we just concluded yesterday, the Court made certain determinations with regard to probative value outweighing any undue prejudice with regard to some. The Court ruled in that matter that some were duplicative of others and did not allow those. And the Court ruled that some were in fact gruesome and didn't allow those.

* * *

MR. ESPOSITO: . . . We have no objection to the photographs that were introduced in the trial yesterday. We have no objection to those being introduced in this, Judge. I'm not going to waste the Court's time. I will stipulate to those, Judge. (Trial Transcript, pp. 18:12-19:19).

37. The Court FINDS that Mr. Nelson's counsel

22

stipulated to the photographs admitted at trial and did not object to those photographs being admitted during trial.

38.   The Court further FINDS that an appropriate pre-trial hearing was conducted regarding the probative value and the potential prejudice to Mr. Nelson in admitting the photographs at trial and found that the photographs['] probative value outweighed the potential prejudice and were not gruesome.

39.   Accordingly, Petitioner's asserted ground for relief regarding gruesome photographs is without merit and the instant Petition is DENIED.

(ECF No. 9, Ex. 8 at 14-15).

In the course of Trooper Milum's trial testimony, and that of several other witnesses, a number of photographs of Lesher's body and its location were displayed to the jury. The parties stipulated to the admissibility of some of the photographs, and others where admitted without objection by the defendant. Petitioner's alleged accomplice, Zandell Bryant, was tried the day before Petitioner. During the pre-trial hearings in the Bryant matter, the parties argued over the admissibility of a number of photographs that the State proposed to use as exhibits.[3]   During that proceeding, the Circuit Court found that some of the photographs were gruesome, and did not allow those photographs to be used in the Bryant trial.   Other photographs were admitted,

---

[3]   This court is not in possession of the transcripts from the pre-trial proceeding in the Bryant matter, and has, therefore, not reviewed the arguments made by the parties.  The fact that such an argument was made, and a ruling concerning the admissibility of the various photographs made by the Circuit Court in the Bryant matter is derived from statements made by counsel and the trial court in Petitioner's pre-trial proceeding, as stated above.  (ECF No. 9, Ex. 8 at 8-9).

after a balancing of their probative value versus their prejudicial effect.    In Petitioner's trial, his counsel stipulated to the admissibility of the same photographs.  (Id.)

Petitioner has not demonstrated that his trial was fundamentally unfair or marred by any other violation of his federal constitutional rights based upon the admission of photographs of the victim at his trial.  Thus, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying him habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on Ground Four of Petitioner's section 2254 petition.

**D.    Ground Five - Ineffective assistance of counsel.**

In Ground Five of his section 2254 petition, Petitioner asserts that his trial counsel was constitutionally ineffective because he failed to call witnesses who could have impeached the credibility of Alfred Dingess, Jr.    (ECF No. 1 at 24). Petitioner's petition further states:

> Aaron Nelson was ineffectively represented at the trial of this matter.  There were many witnesses who could have testified and impeached the credibility of Alfred Dingess, Jr.  In his pro se petition, Mr. Aaron Nelson has provided affidavits of various witnesses who have relevant information regarding the admissions and action of Alfred Dingess, Jr., that would have impeached the testimony of the State's key witness, Alfred Dingess, Jr.    Counsel could have presented this important testimony through a hearsay exception in order to show Alfred Dingess, Jr. changed his story, never implicated

24

the Nelson brothers until he talked to the police, and
was a drug and alcohol abuser, and known to lie.

(Id.)

Respondent's Memorandum of Law in support of his Motion for
Summary Judgment asserts that Petitioner has insufficiently pled
this claim under the federal standard of review. (ECF No. 10 at
18-19). In Strickland v. Washington, 466 U.S. 688 (1984), the
Supreme Court adopted a two-prong test for determining whether a
defendant received adequate assistance of counsel. A defendant
must show (1) that counsel's representation fell below an objective
standard of reasonableness; and (2) that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. Id. at 687-91.
Moreover, "judicial scrutiny of counsel's performance must be
highly deferential." Id. at 689. Furthermore, the AEDPA "adds a
layer of respect for a state court's application of the legal
standard." Holman v. Gilmore, 126 F.3d 876, 881 (7th Cir. 1997).

Respondent's Memorandum further states:

> The burden of proof rests with Petitioner. In the
> case-at-bar, the Petitioner has failed to prove violation
> of either prong of the Strickland test. Indeed, he has
> failed to provide this Court with any concrete evidence
> of constitutionally ineffective assistance. His ground
> for relief is insufficiently pled. Notice pleading is
> insufficient in federal habeas corpus. See Blackledge v.
> Allison, 431 U.S. 63, 75 n.7 (1977) ("'[N]otice' pleading
> is not sufficient, for the petition is expected to state
> facts that point to a 'real possibility of constitutional
> error'")(citation omitted); see also § 2254 Rule
> 2(c)("The petition . . . shall specify all the grounds
> for relief which are available to the petitioner . . .
> and shall set forth in summary form the facts supporting

25

each of the grounds thus specified.") "Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994); see also id. at 860 (O'Connor, J., concurring in part and dissenting in part)("the habeas petition, unlike a complaint, must alleged the factual underpinning of the petitioner's claims.")

Petitioner's ground for relief is insufficient on its face, and should be summarily dismissed with prejudice.

(ECF No. 10 at 19).

Petitioner's federal petition does not identify any specific witnesses whose testimony Petitioner believes would have impeached that of Alfred Dingess, Jr. Nor has Petitioner specified what specific impeachment testimony those witnesses would have provided. Petitioner attached to his previously-filed state habeas petition a number of hand-written affidavits from friends, family and neighbors, attempting to call into question Mr. Dingess's and Mr. Bryant's veracity and credibility, as well as their mental capacity. However, in Petitioner's omnibus habeas corpus hearing, Petitioner did not present any of those witnesses, or any evidence concerning Mr. Dingess's credibility, other than the testimony of Petitioner's father.

At the omnibus hearing, Petitioner testified, along with his father, Audie Nelson, and his sister, Sheila Fleming. Audie Nelson testified that he lived next door to Petitioner and saw him come home on the night of the murder at approximately 3:00 a.m. Petitioner and Audie Nelson both testified that another person, a shop-keeper named Tony Thompson, was across the street and was

looking out a window at the time Petitioner came home.  The focus of the testimony was on the fact that Petitioner's counsel did not call either Audie Nelson or Tony Thompson as witnesses at the trial.[4]

Petitioner's sister, Sheila Fleming, testified that she received approximately 15-20 phone calls from Petitioner on the night of the crime, and that the calls appeared on her caller ID. The first call came from a bar, and Ms. Fleming stated that Petitioner asked her to come get him and give him a ride home.  She said she told Petitioner she could not give him a ride because her car was broken down.  (ECF No. 9, Ex. 12 at 40).  Ms. Fleming further testified that the other calls came from Petitioner's home, indicating that he must have been home at the time of the Lesher crimes.  (Id. at 40-41).  Ms. Fleming stated that she told Trooper Milum about the calls and offered to give them her caller ID to verify the calls.  (Id.)  Ms. Fleming was also not called as a trial witness.

The State habeas court made the following findings on Petitioner's ineffective assistance of counsel claim:

> 43.  Under the Strickland test Petitioner has failed to show legally sufficient evidence to support an assertion that the Petitioner's trial representation fell below an objective standard of reasonableness to [sic; so] that there is a reasonable probability that the jury verdict would have been different but for trial counsel's alleged

---

[4]  Tony Thompson did not testify at the omnibus hearing. According to Audie Nelson, Mr. Thompson was in the hospital on the day of the omnibus hearing.  (ECF No. 9, Ex. 12 at 35).

errors.

44. The Court FINDS that trial counsel properly exercised his authority regarding which witnesses to call at trial and what evidence to present before the Jury.

45. The Court FINDS that under the first standard of <u>Strickland</u> trial counsel's actions were not deficient under an objective standard of reasonableness.

46. The Court FINDS that there is no reasonable likelihood that the Jury Verdict would have been different had trial counsel presented the additional witnesses at trial.

47. Accordingly, Petitioner's asserted ground for relief regarding ineffective assistance of counsel is without merit and the instant Petition is DENIED.

(ECF No. 9, Ex. 8 at 15-16).

The failure to call witnesses is a tactical decision which generally does not amount to ineffective assistance of counsel. See <u>Goodson v. United States</u>, 564 F.2d 1071, 1072 (4th Cir. 1977). Furthermore, ineffective assistance is not shown where witnesses who were not called to testify would not have helped the defense. See <u>Jones v. Taylor</u>, 547 F.2d 808, 810-811 (4th Cir. 1977). Petitioner merely speculates that testimony of witnesses that were not called by his counsel as defense witnesses would have changed the outcome of his trial. Based upon a review of the entire record, the undersigned proposes that the presiding District Judge **FIND** that the decision of Petitioner's counsel not to call certain witnesses at trial was a matter of trial strategy, and that the decision was objectively reasonable under the totality of the

28

circumstances.

Moreover, Petitioner has not shown that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Thus, the court proposes that the District Court **FIND** that Petitioner has not made a sufficient showing of ineffective assistance of counsel based upon these grounds.

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the state habeas courts' decisions denying Petitioner habeas corpus relief on the basis of ineffective assistance of counsel were neither contrary to, nor an unreasonable application of, clearly-established federal law, and that Respondent is entitled to judgment as a matter of law on Ground Five of Petitioner's section 2254 petition.

### E.   Cumulative Error.

Although not pled as a specific ground for relief in Petitioner's section 2254 petition, the "Conclusion" section of the petition asserts that the "cumulative effect of numerous errors committed during the Trial prevented the defendant from receiving a fair trial, [and, therefore,] his conviction should be set aside, even though any one of such errors alone would be harmless error." (ECF No. 2 at 25).  Petitioner has not specified any clearly-established Supreme Court precedent holding that cumulative trial errors which have not been shown to have had a "substantial and injurious effect or influence in determining the jury's verdict"

29

can form the basis for federal habeas relief.

In <u>Fisher v. Angeleone</u>, 163 F.3d 835, 852 (4th Cir. 1998), the Fourth Circuit held that "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error . . . ." Thus, in order for a cumulative error analysis to apply, the court must first find that there have been actual constitutional errors.

Petitioner's claim of cumulative error stems from claims which the undersigned believes to be non-errors. To the extent that Petitioner raises cumulative error claims already addressed herein, those claims lack merit as well.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner was not denied a fair and impartial trial based on the cumulative effect of any alleged errors asserted by Petitioner in his federal petition, and that the state courts' decisions were neither contrary to, nor an unreasonable application of, clearly established federal law.

<u>**RECOMMENDATION**</u>

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (ECF No. 9) and dismiss this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and to transmit a copy to counsel of record.

_____July 7, 2011_____
          Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge

31